## C.B.T. LUMBER, INC., Plaintiff

### v.

## PACIFIC RELIANT INDUSTRIES, INC., Defendant

High Court of American Samoa
Trial Division

CA No. 06-90

October 29, 1991

Before KRUSE, Chief Justice, MATA'UTIA, Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Charles V. Ala'ilima
 For Defendant, Roy J.D. Hall, Jr.

Plaintiff, a local corporation, was at all relevant times in the business of selling builder's supplies. Defendant, a foreign corporation, was at all relevant times exporting lumber and other building material to the territory. Defendant had apparently shipped a quantity of building material to another on-island builder's supplies dealer, Pacific Paradise

Development Company, who could not pay.[1] Consequently, defendant sought out interested third-party buyers.

Findings of Fact

In its efforts to find third-party buyers, defendant managed to sell some lumber and nails to plaintiff. This transaction took place around April 1988. Later on, around June 1988, defendant's Mr. James Nava (hereinafter "Nava") approached plaintiff's Mr. Beaver Ho Ching (hereinafter "Ho Ching") regarding a concrete block making machine (hereinafter "block machine") which the defendant had also landed on island and wanted to sell. The block machine had been shipped disassembled, as "block machine parts," and at the time, it was still in its shipping container among other assorted items. After a series of inquiries from plaintiff and assurances from the defendant to the effect that the block machine was working and in good condition, plaintiff purchased the block machine for $25,000.00.

As it turned out, the block machine was in no condition to manufacture blocks--which prompted Ho Ching to ask for the return of his company's money. Nava, on other hand, proposed to Ho Ching that he get the block machine working and that they would subsequently work out "something" between them in the way of sharing the cost of parts. Ho Ching was then given the name of the machine's manufacturer, located in Vancouver, to contact for parts and repairs; which he did. The block machine did indeed prove to require extensive refitting and repairs. For parts and accessories alone, the total bill was in excess of $35,000; the block machine had apparently been sitting unused and deteriorating for many years somewhere in Minnesota before it was purchased by defendant. Eventually the block machine was restored to working order by plaintiff, and in January 1989, it finally started to manufacture concrete blocks.

The "something" which plaintiff had expected to be worked out on the cost of parts was not; hence this litigation. Plaintiff here seeks reimbursement for the cost of parts required to fix the block machine as well as damages for four months of lost profits while the block machine was being fixed. Defendant, on the other hand, denies liability by arguing an "as is" sale of "a [shipping] container containing a list of

---

[1] This gave rise to other suits. See Pacific Reliant Industries v. Amerika Samoa Bank, 14 A.S.R.2d 41 (1990).

specific machinery and accessories that represented a 10AB Columbia Concrete Machine." Defendant's Trial Memorandum, at pages 1-2.

## Conclusions of Law

We find it difficult to believe, and hence reject the claim, that defendant had merely offered to sell plaintiff (and that plaintiff had in turn intended to spend $25,000.00 to buy) a miscellaneous assortment of concrete block machine parts. Rather, we find on the evidence that while defendant had offered to sell plaintiff a concrete block machine which it had represented, and thus expressly warranted, to be in good working condition, it had in actuality sold plaintiff an assortment of parts or remnants of a 10AB Columbia Concrete Machine. There was therefore, in our view, a fundamental variance between the performance promised and that made. We conclude breach of contract on the part of defendant.[2]

As to damages, however, the evidence also shows that plaintiff now effectively has an asset, the restored block machine, worth significantly in excess of purchase price and cost of parts and accessories. A dealer in these types of machines, a Mr. Bill Stewart, testified to this effect. At the same time, Ho Ching had also testified that his company had purchased another block machine which they have been using, and that the block machine in question has since been dismantled and placed in storage. It is thus apparent that, for some time now, the block machine in question has been available for sale and disposition and that plaintiff should have thus made attempts to sell the machine in accordance with its duty to mitigate damages.

In the circumstances, we conclude that the only losses which may be appropriately considered are those relating to plaintiff's claim of lost sales opportunities while the block machine in question was being repaired. In this regard we assess, on the evidence presented, damages resulting from lost sales opportunities directly attributable to defendants breach of contract in the amount of $20,000, and direct that judgment be

---

[2] We are also satisfied that a second agreement was also concluded, and breached by defendant, resulting from defendant's offer to share costs for parts and plaintiff's resulting forbearance from taking immediate action.

28

entered accordingly.[3]

It is so ordered.

---

[3] The proofs presented in this regard left something to be desired. The comparative sales picture presented for the months immediately preceding the period involved with repair work could have been more precise. Rather, Ho Ching testified, it seems from recollection, that production for the month of January 1989 was around six to eight hundred blocks per day, which he translated into a sales picture of $8,000 to $10,000 for the month. He further testified that sales then steadily increased, reaching a figure of $22,000.00 per month. Notwithstanding, we are satisfied that the range of sales figures presented are not without credible foundation. These were heyday times for the building industry following rebuilding and recovery efforts from the effects of hurricane Tusi in the Manu'a group. However, in our conclusion, we have necessarily held plaintiff to the quality of its proofs and given appropriate weight accordingly.